**UNITED STATES**

v.

**Tyrone WALKER, Walter Diaz, and Tony Walker, Defendants.**

**No. 94–CR–328.**

United States District Court, N.D. New York.

Jan. 9, 1996.

United States Attorney, Binghamton, NY, for the Government; Miroslav Lovric and Bernard J. Malone, Jr., Asst. U.S. Attys., of counsel.

Hinman, Howard & Kattell, Binghamton, NY; Albert Millus, of counsel and Ruhnke & Barret, West Orange, NJ; David A. Ruhnke, of counsel, for Defendant Tyrone Walker.

Peter Orville, P.C., Vestal, NY and Carl J. Herman, Livingston, NJ, for Defendant Walter Diaz.

Richard Allen, Binghamton, NY, for Defendant Tony Walker.

**MEMORANDUM DECISION & ORDER**

McAVOY, Chief Judge.

Tyrone Walker and Tony Walker have moved to dismiss the Count One CCE charges against them on the ground that the government has failed to prove beyond a reasonable doubt the fourth essential element of engaging in a Continuing Criminal Enterprise—they claim that the proof will not support a rational jury's conclusion that

they each acted in concert with five or more other persons "with respect to whom [they] occupie[d] a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. § 848(c)(2)(A). The Court stresses that the following discussion identifies only the *minimum* evidence in the record justifying, in the Court's view, submission to the jury of the individuals who the government has alleged are managees, organizees or supervisees of the respective defendants.

## I. DISCUSSION

### A. Organizer, Supervisor or Manager:

 A jury should be instructed that the terms "organizer, supervisor or manager" should be given their everyday, ordinary meaning, implying the exercise of power or authority by a person who occupies some position of a management or supervision. *United States v. Scarpa*, 913 F.2d 993, 1007 (2d Cir.1990) An individual may be said to be "managed" by a defendant where it is demonstrated that the "defendant exerted some type of influence over [an] individual as exemplified by that individual's compliance with the defendant's directions, instructions or terms." *United States v. Possick*, 849 F.2d 332, 336 (8th Cir.1988) (citations omitted).

 A defendant acts as a "supervisor" where he "gives orders or directions to another person who carries them out." *United States v. Apodaca*, 843 F.2d 421, 426 (10th Cir.), *cert. denied*, 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988). A defendant acts as an "Organizer" when he "puts together a number of people engaged in separate activities and arranges them in their activities in one essentially orderly operation or enterprise." *United States v. Patrick*, 965 F.2d 1390, 1397 (6th Cir.1992).

 A particular defendant need not be the sole or only supervisor or manager of the activities or persons in question, nor have enjoyed precisely the same superior-subordinate relationship with each of the persons allegedly organized, supervised and managed. Nor is personal contact a perquisite to establishing the requisite relationship between a defendant and an underling. *United States v. Cruz*, 785 F.2d 399, 407 (2d Cir. 1986) ("The statute does not require personal contact between the leader and each underling."). Finally, CCE defendants can be organizers, supervisors or managers of others, and still have been organized supervised or managed by their CCE co-defendants. *See United States v. Baker*, 10 F.3d 1374 (9th Cir.1993) ("Because § 848 deals with individual liability, a CCE defendant may be an organizer, supervisor or manager in the predicate offenses underlying his CCE conviction and a subordinate in a predicate offense underlying another's CCE conviction. In other words, if one meets all the statutory requirements individually, he may properly be convicted under § 848 even though he himself was 'managed.' "), *cert. denied*, —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994).

### 1. Tyrone Walker:

For purposes of this motion Tyrone Walker concedes that the record contains sufficient evidence to show that he managed, supervised or organized **Wilfred "Josh" Pettway, Bambi Littlefield, and Walter Diaz.** He denies, however, that a reasonable jury could conclude that the requisite relationship existed between him and the other individuals whom the government claims he managed, supervised or organized.[1]

### a. Toni Lopez, Barbara Slater & Stacey Wahl:

As to Toni Lopez, Barbara Slater, and Stacey Wahl, Tyrone Walker maintains that the evidence shows only that he sold cocaine to these three. Tyrone Walker argues that a mere buyer-seller relationship, is insufficient to satisfy the fourth CCE element. While the Court agrees that such a relationship, without more, is insufficient to satisfy the statute, the Court finds that a reasonable jury could conclude from the testimony of

---

**1.** The government originally served a bill of particulars naming twenty-five individuals as Tyrone Walker's managees, supervisees and organizees. At oral argument on this issue the government maintained that position only as to **Wilfred Pett-** way, **Bambi Littlefield, Walter Diaz, Toni Lopez, Barbara Slater, Stacey Wahl, Rosa Rivera, Kevin White, Ernest Cade, and Kenneth Fancher.** The government has since withdrawn Ernest Cade as a potential managee of Tyrone Walker.

these three woman alone, that they were more than mere purchasers of Tyrone Walker's alleged product. The jury could reasonably conclude that all three woman were active members of an ongoing network of cocaine distribution managed and organized by Tyrone Walker.

■ Toni Lopez testified that Tyrone walker lived with her for a brief period during the alleged CCE, (Tr. at 2076) and that from the day he moved in, Tyrone Walker kept cocaine in her home and used her home as a base of operations. (Tr. at 2076–78). This testimony alone is sufficient to establish that Toni Lopez was managed and organized by Tyrone Walker. *See United States v. English,* 925 F.2d 154, 157 (6th Cir.) (individual with knowledge of defendant's drug operation who allows defendant to use home to store narcotics establishes supervision), *Cert. Denied,* 501 U.S. 1210, 111 S.Ct. 2810, 115 L.Ed.2d 983 (1991); *Possick,* 849 F.2d at 337 ("acquiescing in the use of her home for the storage, preparation and sale of cocaine . . . indicate[s] . . . member[ship in defendant's] organization under his management"); *United States v. Lueth,* 807 F.2d 719, 732 (8th Cir.1986) ("defendant's use of another's home to conceal or process drugs found to be evidence of that defendant's dominant or managerial position").

When this testimony is read in conjunction with Lopez's further testimony that she made five or six compensated trips to New York city with Tyrone Walker, at his request, to purchase cocaine (Tr. at 2088) *see Possick,* 849 F.2d at 336 ("accepting paid travel indicates membership in organization") and that she continuously sold cocaine for Tyrone Walker for a percentage of the profits therefrom during the relevant period (Tr. at 2095–2100), there is more than sufficient evidence from which a jury could conclude that Toni Lopez was managed, supervised and organized by Tyrone Walker. *English,* 925 F.2d at 157 (person under defendants organization or supervision where she knew about the drug operation, took orders directly from the defendant and helped in the drug business) (citation omitted)).

■ If believed, **Barbara Slater** and **Stacey Wahl's** testimony in its totality likewise provides strong evidence establishing that these woman sold cocaine for Tyrone Walker on a continuing and organized basis on terms established and dictated by him. (Tr. 2754–56).

As to these three individuals the *Cruz* case is directly on point. A reasonable juror could conclude that the record contains indicia of an ongoing commercial relationship sufficient to establish more than that Toni Lopez, Barbara Slater, and Stacey Wahl were mere purchasers-for-resale from Tyrone Walker's alleged CCE. A juror could reasonably conclude that these three engaged in a structured, ongoing, and continuous distribution relationship with Tyrone Walker, whether or not one would characterize that relationship as one of formal employment or franchised distribution. *See Cruz,* 785 F.2d at 407–408 ("We will not read into the statute a distinction between salaried 'employees' working directly under a 'kingpin' and 'independent contractors' or 'franchisees' who deal only with subordinates."). A jury could conclude that Tyrone Walker traveled to New York City and transported cocaine back to upstate, packaged that cocaine, and distributed that cocaine to these woman for street-level sales on an ongoing basis and under continuing terms of compensation. Such conduct is sufficient to establish that these woman were managed, supervised and organized by Tyrone Walker. *See United States v. Jones,* 801 F.2d 304, 309 (8th Cir. 1986) (element satisfied where defendant "dropped a pound of marijuana every month or so at [managed individual's] house. [Managed individual] would then sell the drugs and later pay [defendant]. [Defendant] visited [managed individual] periodically to see if he needed more of the drug.").

In short, the record provides a sufficient evidentiary basis for a reasonable and rational jury to conclude that Toni Lopez, Barbara Slater, and Stacey Wahl were subordinates within a distribution network organized, managed and supervised by Tyrone Walker and Tony Walker, *see Cruz* at 407, and that these individuals were directly supplied and controlled by Tyrone Walker. The showing here is even stronger than that presented to the *Cruz* Court, where there was no direct

contact between the alleged manager and his organizees. The instant showing, if believed, could support a rational jury's finding, beyond a reasonable doubt, that Tyrone Walker managed, supervised and organized Toni Lopez, Barbara Slater, and Stacey Wahl.

### b. Rosa Rivera:

■ As to Rosa Rivera's relationship with Tyrone Walker, the record supports the conclusion that during some portion of the CCE period, Tyrone Walker resided in Rosa Rivera's third floor apartment at 209 Chestnut. The jury could easily conclude that while residing in Ms. Rivera's home, Tyrone Walker stored cocaine at, and distributed cocaine from that location to other sellers both at 209 Chestnut and elsewhere, and that Ms. Rivera had knowledge of Tyrone Walker's operations from her home. Furthermore, the record also contains evidence that Rosa Rivera allowed Bambi Littlefield to sell Tyrone Walker's cocaine from her apartment. Finally, Barbara Slater testified that when she ran out of the cocaine which she was selling for Tyrone Walker from her first floor apartment, she would get more from the third floor. Slater testified that on those occasions, either Tyrone Walker or Rosa Rivera would hand her the cocaine. (Tr. at 2756).

Taken together and examined in light of the overall evidence of Tyrone Walker's distribution activity at and from 209 Chestnut, there is sufficient evidence from which a reasonable juror could conclude that Rosa Rivera was managed, organized and supervised by Tyrone Walker.

### c. Kevin White:

■ As to **Kevin White**, Wilfred Pettway testified that White was selling cocaine for the CCE and "got" money from 209 Chestnut Street while "work[ing] *for*" Tyrone (Tr. at 3337) and that White was working for either Tyrone Walker or Anthony Walker (Tr. at 3348–49, 3360). Toni Lopez testified that she knew that Kevin White was selling for Tyrone because she "saw Kevin come get cocaine from [Tyrone] and bring him back money." (Tr. at 2103–05). This testimony, in light of the overall picture presented that Tyrone Walker was purchasing, transporting, packaging and distributing cocaine through numerous individual sellers, provides a suffi-

cient basis from which a reasonable jury could conclude that Tyrone Walker managed, supervised and organized Kevin White.

### d. Kenneth Fancher:

■ As to **Kenneth Fancher**, Toni Lopez testified that on at least one occasion, Fancher drove her and Tyrone to New York City to purchase drugs for distribution upstate. (Tr. at 2107–09). The Court does not believe that *one* instance of an individual driving a defendant to pick up narcotics in return for drugs or money, is a sufficient basis for the jury to conclude without more, that the transporting person was managed, supervised or organized by the defendant. A rational juror could conclude from Fancher's own testimony, however, that Fancher, with full knowledge of Tyrone Walker's drug distribution activities (Tr. at 2684) transported Walker on several occasions other than the Lopez trip, to the same location, in the same manner, under the same terms of compensation. (Tr. at 2685) ("He would give me my share which was like $100 for taking him down and then drop him off at the bus station or in town. Sometimes he would stay a couple of days or whatever."); (Tr. at 2686) (describing trip with Tyrone accompanied by other individuals); (Tr. at 2688) ("I either drop him off at the bus station or some place in the city or, you know, he would sometime stay there, whatever.") If believed, this testimony provides sufficient indicia of a continuing relationship within which Fancher provided services supporting Tyrone Walker's narcotics distribution enterprise in return for payment in money or drugs. Fancher's testimony reflecting more than a single isolated trip, when read in light of Lopez's corroborating testimony, could support a rational juror's conclusion, beyond a reasonable doubt, that Fancher was organized and managed by Tyrone Walker in connection with the alleged CCE. *See Possick*, 849 F.2d at 336 (regularity of business transacted is some indication of formal management relationship).

## 2. Anthony Walker:

Tony Walker denies that a reasonable jury could conclude that he managed, supervised

or organized the individuals the government relies on to satisfy the fourth CCE element as against him.[2]

It was the thrust of **Wilfred Pettway's** testimony that Tyrone Walker and Tony Walker were together operating an ongoing narcotics distribution organization, funded and managed by both, (Tr. 3334), in which both would transport cocaine upstate, cut and package the cocaine, and distribute the packaged product to various street-level dealers for distribution from various locations. *See also,* Lisa Nixon (Tr. at 1965–70) ("Well, [Tony Walker] wasn't selling. He wasn't distributing drugs. Other people were distributing drugs for him.") It was within this context that Pettway characterized himself and others as "working for" Tony (Tr. at 3339–41). This testimony likewise evokes a *Cruz*-type scenario of managing individuals directing a street-level narcotics distribution enterprise participated in by numerous supervised and organized low-level drug-dealers, and, it is within the context of this testimony that the Court assess the testimony that various individuals "worked for" Tony Walker. This totality-of-evidence perspective is important because the Court is of the view that the jury could properly conclude that any individuals who sold cocaine directly for Tony Walker, within this distribution operation during the relevant timeframe, may properly be considered to have been managed and organized by him.

### a. Wilfred Pettway:

■ Wilfred Pettway testified that from December of 1992 through February of 1993 he was selling cocaine for Tony Walker (Tr. at 3325–51). He testified that he was paid forty percent of the profits from his endeavors with Tony, who retained sixty percent (Tr. at 3339–40). The testimony of Lisa Nixon (Tr. at 1969) and James Regan (Tr. 2886) corroborates Pettway's characterization of

himself as a worker for Tyrone Walker and the Court finds this testimony a sufficient basis from which a reasonable jury could conclude that Wilfred Pettway was managed, supervised and organized by Tony Walker during the relevant period.

### b. Kenneth Richardson, Lisa Nixon, Tim Keener, Rosa Rivera, Lasina Frank, Bonnie Sear, Toni Lopez, Barney LNU & Petey LNU:

■ **Kenneth Richardson** testified that upon his release from jail in December of 1992, he went to live with Tony Walker, first at the Canal Lock Apartments and later, in January of 1993, at 9 Inwood in Ellenville. (Tr. at 1666). Richardson testified that he sold Tony's cocaine during the CCE period. (Tr. at 1680–82).[3] Richardson also testified that during at least part of the relevant CCE period, (*i.e.* January of 1993) **Lisa Nixon** was "working for Tony" by selling his cocaine in the Other Place bar. (Tr. at 1680). Lisa Nixon confirmed Richardson's testimony by testifying that she sold cocaine for Tony Walker through Wilfred Pettway and Kenneth Richardson (Tr. at 1972) ("[Tony] would have none on him. He would tell me to go to one of the boys") and through her testimony that Kenneth Richardson was selling for Tony during the relevant period (Tr. at 1973–74).

Lisa Nixon also testified, in the context of describing how Tony Walker's narcotics operation had "blew up" that an individual named **Tim Keener** was selling drugs for Tony. (Tr. at 1968).

Dana Rodriguez testified that during the relevant period she observed Tony Walker pick up money from, and drop off packaged cocaine for street-level distribution to, **Rosa Rivera,** who would later dispense that cocaine for sale by other residents of 209 Chestnut. (Tr. at 2591–93). Barbara Sla-

---

2. At argument on these motions the government maintained that Tony Walker managed, supervised or organized **Lasina Frank, Wilfred Pettway, Ernest Cade, Kenneth Richardson, Lisa Nixon, Pete LNU, Barney LNU, Tim Keener, James Regan, Walter Diaz, Rosa Rivera, Toni Lopez, Bonnie Sear and Kevin White.** The government has since withdrawn Walter Diaz as a potential managee of Tony Walker.

3. Richardson also testified, however, that Anthony Walker first introduced Wilfred Pettway to him as one of Walker's new workers in April of 1993, which would place all his testimony regarding Pettway (Tr. at 1673–80), *outside* the alleged CCE period.

ter's testimony corroborated Rodriguez's testimony regarding Tony Walker's management and organization of Rivera. (Tr. at 2768).

Wilfred Pettway testified that during the CCE period **Lasina Frank and Bonnie Sear** sold Tony Walker's cocaine through Pettway, with Walker's knowledge of this arrangement. Pettway testified that he used Frank and Sear for direct sales after Tony objected to Pettway's numerous "hand-to-hand" sales within the Other Place bar and that he told Tony of this arrangement to assuage Tony's fear that Pettway would be arrested. (Tr. at 3360–63). *Cf. Possick,* 849 F.2d at 336–37 ("management" satisfied where record demonstrated that "defendant exerted some type of influence over another individual as exemplified by that individual's compliance with the defendant's directions, instructions or terms," and, dictating to whom an individual may sell and instructing individual on means to avoid arrest are indications of management).

■■■ **Toni Lopez** testified that during the period that she was distributing cocaine for Tyrone Walker, and after her arrest on February 6th, 1993, Tony Walker brought her a bundle of cocaine packages to sell. (Tr. at 2139–2143). Based on her testimony a rational jury could conclude that Tony Walker delivered this cocaine packaged for resale to Toni Lopez within the framework and during the pendency of the CCE.

Kenneth Richardson testified that an individual named **"Barney"** was working for and selling cocaine for Tony Walker during the CCE time-frame. (Tr. at 1681) ("I seen him, I seen [Tony] giving him cocaine, I—if I had to get some cocaine for a customer I would have to go to Barney, find Barney."). Lisa Nixon corroborated this testimony. (Tr. at 1968, 1975). Wilfred Pettway testified that an individual named **Petey** also sold for Tony during the relevant period. (Tr. at 3351–52). While both individuals are somewhat sketchily identified there appears to be no indication that either is actually one of the other low-level sellers already identified as a CCE participant. *See United States v. Alvarez,* 860 F.2d 801, 816–17 (7th Cir.1988) (defendant found to have organized individual

known only as 'the Compadre.' "While it hardly will be possible for the government to identify each actor by name, it is necessary that, in such a circumstance, sufficient other evidence be introduced to establish a separate and distinct identity."); *Possick,* 849 F.2d at 336 ("Fact that individual's identity was unknown is irrelevant" to question of supervision.").

All of this testimonial evidence, which the government asserts establishes Tony Walker's management and organization of five or more individuals within this alleged narcotics enterprise, turns on the jury's assessment of the credibility of those who testified. Such testimony can, however, provide a sufficient basis for a jury's conclusions in this regard, *See, i.e. Scarpa,* 913 F.2d at 1007, particularly when viewed in the context of the totality of the evidence introduced at trial. Based on all the foregoing then, the record reflects sufficient evidence that, if believed, could support a reasonable jury's conclusion that the foregoing individuals were organized, supervised and managed by Tony Walker in their capacities as sellers within Tyrone Walker and Tony Walker's narcotics distribution organization, during the relevant period.

c. **Ernest Cade:**

■■■ **Ernest Cade** testified that he drove Tony Walker and Wilfred Pettway to New York City "a few times" to pick up cocaine for distribution within the cocaine enterprise. (Tr. at 3070). He also testified that Tony Walker purchased and paid the insurance on two vehicles which were registered in Cade's name and which Cade used to transport Tony Walker and Pettway on various enterprise-related errands. (Tr. at 3070–73). Both Cade (Tr. at 3073–75) and Pettway (Tr. at 3364–66) testified that Cade acted as a driver for Tony Walker on a regular basis and was paid with cocaine for his services. Such activities, if believed, provide a sufficient basis for a rational jury to conclude that Cade was part of the alleged enterprise's operations and was managed, supervised and organized by Tony walker.

**d. James Regan:**

 James Regan testified to multiple trips to New York at Tony Walker's behest, to pick up cocaine for distribution upstate. (Tr. at 2887–90) ("Q. Why was it you came to go to New York City? A. To give Tony a ride down. Q. And what was the purpose of the trip? ... A. To pick up Coke."). Regan testified that he was paid a gram of cocaine for these trips. (Tr. at 2890). Kenneth Richardson's testimony corroborated at least one of these trips. (Tr. at 1679). Once again, these repeated trips to New York City at the behest of Tony Walker and on the same continuing terms of compensation provide a sufficient basis for a rational jury to conclude that Tony Walker managed, supervised and organized James Regan during the pendency of the CCE.

**e. Kevin White:**

 Wilfred Pettway testified that Kevin White was selling cocaine for the CCE during the relevant period, but that he did not know whether White worked for Tyrone Walker and Tony Walker. (Tr. at 3349) ("I don't know. He was working for, I don't know exactly which, Tyrone or Tony. I know he was working for one of them. He was holding the packs for them.") While Tony Lopez's testimony provided a sufficient corroborative basis for a jury to conclude that Tyrone Walker managed and organized White, the government points to no such corroborating testimony in the record as to the relationship between White and Tony Walker. Pettway's inconclusive and uncertain testimony is, standing alone, an insufficient basis for the conclusion beyond a reasonable doubt that Tony Walker managed, supervised or organized Kevin White and as to Tony Walker, White's name will not be submitted to the jury in potential satisfaction of this element. *See Patrick,* 965 F.2d at 1396 (element not satisfied where record contained no evidence that defendant had involvement in organizing individuals narcotics resales).

## III. CONCLUSION:

The foregoing analysis establishes that there is a minimally sufficient basis in the record for a rational jury to conclude that Tyrone Walker managed, supervised and organized **Josh Pettway, Bambi Littlefield, Walter Diaz, Toni Lopez, Barbara Slater, Stacey Wahl, Rosa Rivera, Kevin White and Kenneth Fancher** during the pendency of the alleged CCE;

Likewise, the record contains a minimally sufficient basis to support a rational jury's conclusion that Tony Walker managed supervised and organized **Wilfred Pettway, Kenneth Richardson, Lisa Nixon, Tim Keener, Rosa Rivera, Lasina Frank, Bonnie Sear, Toni Lopez, Barney LNU, Petey LNU, Ernest Cade, James Regan,** during the pendency of the alleged CCE;

These names, and no others, will be presented to the jury as to the respective defendants in potential satisfaction of the third and fourth essential elements of the alleged Count One CCE.

**IT IS SO ORDERED.**