**UNITED STATES of America,
Appellee,**

v.

**Edward Lee HARRIS, aka "Red",
Defendant–Appellant.**

**Docket Nos. 98–1586(L), 98–1587**

United States Court of Appeals,
Second Circuit.

Argued Nov. 16, 1999

Decided April 12, 2000

Christopher V. Taffe, Assistant United States Attorney, Rochester, New York (Denise E. O'Donnell, United States Attorney for the Western District of New York, Rochester, New York, on the brief), for Appellee.

Darrell B. Fields, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, New York, for Defendant–Appellant.

Before: KEARSE and KATZMANN, Circuit Judges, and SIRAGUSA, District Judge.*

PER CURIAM:

Edward Lee Harris appeals from a judgment convicting him of engaging in a continuing criminal enterprise ("C.C.E."), criminal forfeiture and tax evasion. Appellant Harris raises two categories of issues. First, he contends that the district court's plea colloquy on the C.C.E. charge was insufficient because the district court did not adequately explain to him, and

* The Honorable Charles J. Siragusa, of the United States District Court for the Western District of New York, sitting by designation.

assure that he understood, that supervising, within the meaning of the C.C.E. statute, did not include a mere buyer-seller relationship, and because the colloquy failed to identify the five people whom he supervised. As a remedy, Harris seeks to have us vacate his guilty plea. Second, he alleges the district court erred by not re-sentencing him *de novo* after granting his petition for a writ of habeas corpus and vacating his originally-imposed sentence. As a remedy, he seeks vacatur of his sentence and a remand for sentencing *de novo*. On the first point, we find that Harris's contentions are without merit and that the district court's plea colloquy was sufficient. However, as to the second, we hold that, having vacated Harris's prior sentence for failure to advise him of his right to appeal, the district court should have sentenced him *de novo*. On this point, therefore, we vacate Harris's sentence and remand for sentencing *de novo*.

## BACKGROUND

On September 18, 1992, Harris entered pleas of guilty, pursuant to a written plea agreement, to three federal violations, one of which was under the C.C.E. statute, 21 U.S.C. § 848. He was sentenced on May 7, 1993, in accordance with the plea agreement, to, *inter alia*, 240 months of confinement. At his sentencing, the district court did not inform Harris of his right to appeal as required by Federal Rule of Criminal Procedure 32(c)(5).[1]

On April 8, 1997, almost four full years after he was sentenced, Harris filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. In the petition he alleged that the sentencing judge did not inform him at the time of his 1993 sentence that he had the right to appeal. Harris also listed the issues he intended to raise on appeal, including the sufficiency of the plea colloquy and the government's bad faith in failing to file a downward departure motion, pursuant to United States Sentencing Guidelines ("U.S.S.G") § 5K1.1, for substantial assistance.

Relying on our decision in *Reid v. United States*, 69 F.3d 688 (2d Cir.1995)[2], the district court granted the writ and held that the failure to inform Harris of his right to appeal at the time of the sentencing was a *per se* error under Federal Rule of Criminal Procedure 35(a)(2). Noting that Harris had not in fact appealed from his conviction, the district court vacated his sentence "in all respects" and ordered the case scheduled for resentencing. *United States v. Harris*, Nos. 91–CR–256L & 92–CR–225L, slip op. at 2 (W.D.N.Y. Jun. 6, 1997).

Harris informed the district court by letter of the issues he intended to raise at the resentencing, including the insufficiency of the plea colloquy and the government's bad faith in failing to bring a U.S.S.G. § 5K1.1 motion for a downward departure. The government, in responding to Harris's petition for a writ of habeas corpus, filed a memorandum of law opposing *de novo* resentencing. The government cited our decision in *United States v. Versaglio*, 85 F.3d 943, 948–49 (2d Cir. 1996), arguing that the district court lacked the authority in resentencing to revise components of the original sentence unrelated to the reason for the resentencing. The government's memorandum also acknowledged that Harris alleged the government acted in bad faith by withholding the § 5K1.1 motion and by not making a

---

1. The current provision of Federal Rule of Criminal Procedure 32(c)(5), requiring a sentencing court to inform the defendant of his right to appeal, was, in 1993, located in subdivision (a)(2). The Committee notes make it clear that the 1994 amendment placing this requirement into subdivision (c)(5) was not meant to effect a substantive change to that provision. *See* Fed.R.Crim.P. 32, advisory committee's notes, 1994 amendments, Subdivision (c).

2. The Supreme Court curtailed any *per se* rule articulated by *Reid* in favor of a harmless error analysis in *Peguero v. United States*, 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999).

Federal Rule of Criminal Procedure 35 motion. The government, in its memorandum, conceded, "[t]his allegation is sufficient to trigger an inquiry by the Court into the reasons for withholding the motions." The government attached rebuttal evidence consisting of DEA investigative reports and argued that Harris had extended only minimal cooperation and, thus, did not meet the requirements of the plea agreement sufficiently to trigger the government's obligation to file a § 5K1.1 motion.

On January 14, 1998, the district court filed a decision and order in which it held that the parties were to address the matters which they wished to raise at the resentencing. Harris filed a twelve-page memorandum and attached forty pages of transcripts from tape recordings in support of his contention that the government acted in bad faith in not filing a § 5K1.1 motion. In his memorandum, Harris also argued that his plea to the C.C.E. count was without a factual basis, since the five individuals he supervised were never identified.

On September 11, 1998, the district court filed a decision and order in which it held that there was no need to resentence Harris *de novo. United States v. Harris,* 22 F.Supp.2d 46, 47 (W.D.N.Y.1998). On October 7, 1998, the district court resentenced Harris to 240 months of confinement. Harris did not appeal from the district court's September 11, 1998 order denying him a resentencing *de novo,* but that issue is before this Court on direct appeal from the judgment of conviction.

## DISCUSSION

### Sufficiency of Plea Colloquy

Harris contends that the identity of the supervisees for the C.C.E. charge was insufficiently placed on the record during his plea colloquy. The transcript of the plea colloquy on September 18, 1992 ("Tr.") indicates that the district court asked the prosecutor to place on the record the fac-

tual basis for the charges. Tr. 18. Part of the prosecutor's factual recitation included the following:

> With respect to the element of those violations occurring with five or more other people, it would be the government's intent to prove beyond a reasonable doubt that Mr. Harris organized, supervised or managed five people; Delaine Gipson, through these conversations, he directed Ms. Gipson to obtain cocaine; also organized and managed Mr. Gilbert Harris [Harris's brother] and attempted to arrange cocaine to sell to him so that Mr. Gilbert Harris [could] sell it to other individuals, and also based upon his relationship with Mr. Gilbert Harris and Ms. Gipson, they in turn managed, supervised or organized at least three other people whose names are not known by the government but are actually individuals who based upon their relationship with Mr. Harris's associates, would therefore be organized, managed or supervised by Mr. Harris, as well.

Tr. 21–22.

The district court asked Harris, "[d]o you agree and acknowledge the prosecutor's representation that you were in a supervisory or managerial position over at least five other folks, people, involved in this?" Tr. 23. Harris responded, "Yes." *Id.* Later in the proceeding the prosecutor stated,

> Judge, in our negotiations, Mr. Bowman alerted to me that Mr. Harris did not feel that all the individuals listed in count 1 by the government he had managed, organized, supervised. However, he did acknowledge there were five individuals. The only two individuals that Mr. Harris would acknowledge for the plea colloquy would be Ms. Gipson and his brother Gilbert Harris.

Tr. 29. The district court then responded, "[w]ell, he is prepared to admit there were in addition to Gipson and Harris at least three more?" The defense counsel responded, "[t]hree *identified* others, your

Honor." *Id.* (emphasis added). Harris then confirmed what his counsel had said. *Id.* Just prior to receiving Harris's guilty plea on this count, the district court stated,

[T]hat these violations were part of a continuing series of violations of these statutes by you in concert with at least five other persons, two of them being Delaine Gipson and Gilbert Harris, with respect to whom you, Edward Lee Harris, occupied a position of organizer, supervisor or manager and from which series of violations you obtained substantial income and resources, all in violation of a federal statute, Title 21 United States Code, Section 848.

Tr. 30.

■ Even where a case goes through trial, and the question is the sufficiency of the trial evidence to support a guilty verdict, the identity of the supervisees need not be specific in order to support a valid conviction under 21 U.S.C. § 848. In *United States v. Polanco,* 145 F.3d 536 (2d Cir.1998), this Court held that identification of Polanco's supervisees only by their first names or street names was sufficient. *Id.* at 542. We quoted the Seventh Circuit's holding in *United States v. Alvarez,* 860 F.2d 801, 817 (7th Cir.1988), that "it 'is not necessary for the government to establish in every CCE case the specific identity of all five individuals subject to the defendant's direction.' " In *Polanco,* 145 F.3d at 542, we held, "the government need only 'submit sufficient evidence to permit a rational jury to conclude that each of those [partially identified] individuals had been directed by the defendant.' " *Id.* (quoting *Alvarez,* 860 F.2d at 817). In that regard, we favorably cited to a district court case where the supervisees were identified only by the names of "Barney" and "Petey," which we found sufficient to support a C.C.E. conviction, since "[w]hile both individuals are somewhat sketchily identified there appears to be no indication that either is actually one of the other low-level sellers already identified as a CCE participant." *United States v. Walker,* 912

F.Supp. 655, 662 (N.D.N.Y.1996), *aff'd. in part, rev'd in part on other grounds,* 142 F.3d 103 (2d Cir.1998). Harris's brief in this Court does not address the *Polanco* or *Walker* cases.

The government also refers the court to *Richardson v. Unites States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999). In an opinion by Justice Breyer, the Supreme Court held that the jury in a C.C.E. case must unanimously agree not only that the defendant committed some "continuing series of violations," but also about which specific violations make up that continuing series. *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 1709, 143 L.Ed.2d 985. Justice Breyer's opinion went on to address issues raised by the government and by the dissent. The government cited to the five-person element of the C.C.E. charge in arguing that, "no one claims that the jury must unanimously agree about the identity of those five other persons." *Id.* 119 S.Ct. at 1713. The Court, however, assumed without deciding that there is no unanimity requirement with respect to the provisions regarding the five-person and the substantial income elements of the C.C.E. offense. Justice Kennedy, in his dissent, wrote, "[w]ith respect to the requirement of action in concert with five or more other persons, every Court of Appeals to have considered the issue has concluded that the element aims the statute at enterprises of a certain size, so the identity of the individual supervisees is irrelevant." *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 1715, 143 L.Ed.2d 985 (citations omitted) (Kennedy, J., dissenting). Harris's brief does not address the *Richardson* case.

■ These cases establish that even at trial, the government need not prove the identities of the five persons supervised in order to establish that element of a continuing criminal enterprise. *A fortiori* there need not be proof of those identities before the court may properly accept a plea of guilty. Thus, in *Fama v. United States,* 901 F.2d 1175 (2d Cir.1990), this

Court found that the defendant had provided the court with "ample information to support the conclusion that [the defendant] had managed or supervised five or more persons." *Id.* at 1177. In the plea colloquy, the defendant, Fama, stated he had managed several people who worked for him and who, on a monthly or weekly basis, distributed the heroin he had bought. *Id.* The court inquired, "[p]eople who are customers, or people you managed or both . . . ." *Id.* Fama responded, "[p]eople I managed. People that I gave heroin to on consignment. The names are Joe, John, there is a Frank, Philip and then another Philip, a Bruno. I can't remember them all, your Honor, but there are more than five people there." *Id.* This Court held that the six people named by Fama in his plea colloquy qualified under the indictment as, "others known and unknown" in addition to the five family members named in the indictment. We held that since Fama had admitted to supervising at least five individuals in the continuing criminal enterprise, it did not matter that the individuals he identified were different from those identified in the indictment. *Id.* at 1177. Although Harris did not identify by name five individuals whom he managed, organized, or supervised in the continuing criminal enterprise, this did not mean the court could not conclude that there was "a factual basis for the plea." Fed.R.Crim.P. 11(f). Rule 11(f)

> does not require that the court be satisfied that a jury would return a verdict of guilty. Nor does it require the court to weigh evidence to assess whether it is even more likely than not that the defendant is guilty. Indeed, when the court considers a plea of guilty prior to trial, it often has no actual evidence to assess. Rather, Rule 11(f) requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty:
>
> > The judge must determine *"that the conduct which the defendant admits*

*constitutes the offense charged* in the indictment or information or an offense included therein to which the defendant has pleaded guilty." Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge."

*McCarthy v. United States,* 394 U.S. [459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)] (footnotes omitted) (quoting Fed.R.Crim.P. 11 Advisory Committee Note (1996)) (emphasis ours).

In making its factual basis determination, the court is not required to rely solely on the defendant's own admissions. The Rule

> does not specify that any particular type of inquiry be made. . . . An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case.

Fed.R.Crim.P. 11 Advisory Committee Note (1974) (Rule 11(f)) (emphasis omitted).

*United States v. Maher,* 108 F.3d 1513, 1524 (2d Cir.1997).

In the present case, as set out in some detail at the start of this section, the district court questioned Harris specifically and received repeated assurances from both Harris and his attorney that Harris held a supervisory or managerial role with respect to five persons. The record shows that Harris identified, by name, two of the five individuals whom he supervised and admitted in his colloquy that there were three others whom he would not name, but whom he admitted he supervised. It appears from the colloquy among the judge, prosecutor, defense counsel, and defen-

dant, that Harris fully acknowledged there were at least five individuals whom he supervised. However, for reasons he did not express, he did not want to identify them, except for the two, Ms. Gipson and his brother, Gilbert. Tr. 29. The defense counsel specifically stated, "[t]hree *identified* others, your Honor." *Id.* (emphasis added). Harris confirmed his counsel's assertion *Id.* For reasons not stated in the record, Harris apparently informed the government prior to the plea that, "[t]he only two individuals that Mr. Harris would acknowledge *for the plea colloquy* would be Ms. Gipson and his brother, Gilbert Harris." Tr. 29 (emphasis added). Harris should not be permitted to protect the identity of his supervisees and then attack his plea colloquy as insufficient, while at the same time taking the benefit of a plea agreement to limit his exposure to incarceration. Thus, notwithstanding that he identified by name only two of the five individuals, he clearly acknowledged that there were three others whom he supervised and the record clearly reflects his understanding of that aspect of his plea.

■ Harris further argues that nothing in the record shows he understood that he was not a supervisor, organizer, or manager of those to whom he merely sold drugs, and with whom he, therefore, had a relationship of vendor and customer rather than supervisor and supervisee. Given the heavy emphasis in the plea discussions on the question of whether five others were managed, organized, or supervised, and the absence of any suggestion whatever that Harris was, or viewed himself as, merely a seller, the district court was entitled to infer that Harris, who had a high school education, not only understood the meaning of "supervise," but also the nature of the offense to which he was pleading guilty. For the foregoing reasons, we deny his application to vacate his plea and we affirm his conviction.

## The District Court's Resentencing Procedure

■ Though the district court vacated its sentence in all respects, it held that it had discretion to determine the scope of the resentencing procedure. In that regard, it denied Harris's request for *de novo* sentencing. *United States v. Harris,* 22 F.Supp.2d 46, 48 (W.D.N.Y.1998). The district court reasoned that since the sentence was vacated on grounds entirely unrelated to the sentence itself, and since the purpose of the resentencing was only to permit Harris to be advised of his right to appeal and restart the time clock on his right to file an appeal, it was unnecessary for the district court to consider new issues that were not raised at the original sentencing. *Id.* at 49.

Harris disputes the district court's reasoning and argues that its original decision vacating the sentence did not so restrict the resentencing procedure, and in fact, made no qualifications on the resentencing. Therefore, Harris argues, the district court should have conducted a *de novo* sentencing and considered the issues raised in his memorandum (discussing the grounds he would seek to raise on direct appeal). In support of this contention, Harris points out that, contrary to the district court's implication, he could not bring a successive § 2255 petition to address the government's failure to file a downward departure motion. Harris argues that because of the 1996 Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), he was precluded from bringing another § 2255 petition to raise the issues he sought to raise before the district court on resentencing. Harris also argues that the district court, contrary to case law, *Adams v. United States,* 155 F.3d 582, 583–584 (2d Cir.1998) (*per curiam*), failed to consider the impact of the AEDPA on Harris's ability to bring a successive § 2255 petition and, in fact, implied that he could bring another petition.

Subsequent to the district court's resentencing in this matter, this court decided two cases in which we addressed the remedy for a district court's failure to inform a

defendant at sentencing of his right to appeal. In *Soto v. United States*, 185 F.3d 48 (2d Cir.1999), we discussed the sentencing court's failure to inform Soto of his right to appeal. Relying on *Peguero v. United States*, 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999), we held that under the circumstances present in *Soto*, 185 F.3d at 54, the district court's failure to comply with Rule 32(c)(5) required remanding the case to determine by clear and convincing evidence whether Soto was aware of his right to appeal. We stated, "[i]f, however, the District Court cannot so find, then Soto's sentence shall be vacated and he *shall be resentenced de novo*-and advised of his appellate right-so that he may exercise his right to appeal." *Id.* (emphasis added).

One and one-half weeks after we decided *Soto*, we issued our decision in *Krevsky v. United States*, 186 F.3d 237 (2d Cir.1999). In *Krevsky*, we found that the district court's failure to advise the defendant of his right to appeal was not harmless. We vacated the district court's order denying Krevsky's § 2255 petition and remanded the case with directions to the district court to grant the petition, vacate the sentence and resentence him. The dissent recognized that although we did not specifically remand the case for resentencing *de novo*, resentencing *de novo* was required because of our decision in *Soto*.[3] The district court in this case granted Harris's petition for post-conviction relief and vacated his first sentence in its entirety. In light of our decisions in *Soto* and *Krevsky*, we vacate the district court's sentence and remand for resentencing *de novo*. Since a district court's failure to inform a defendant of his right to appeal is no longer *per se* error, we do not anticipate that mandat-

ing resentencing *de novo* will create a flood of litigation.

## CONCLUSION

For the foregoing reasons, we uphold the denial of Harris's request to withdraw his plea, and we vacate his sentence and remand this case to the district court for resentencing *de novo*.

---

**3.** The Honorable Nicholas Tsoucalas, of the United States Court of International Trade, sat by designation on the panels that decided both *Soto* and *Krevsky* and filed a dissent in both. In *Soto*, the majority ordered that Soto be sentenced *de novo*. Judge Tsoucalas dissented stating, "this Court's remand for resentencing *de novo* creates a loophole allowing defendants who have not been actually

prejudiced in any manner the opportunity to use judicial resources to attempt to relitigate the merits of their claims and to try to raise new ones." *Soto*, 185 F.3d at 58 (Tsoucalas, J., dissenting). Despite his vigorous dissent in *Soto*, the majority remanded the case with an instruction to resentence *de novo* if resentencing was required after a hearing.