UNITED STATES of America, Appellee,

v.

Raymond POLANCO, Defendant–Appellant.

Docket No. 97–1396.

United States Court of Appeals, Second Circuit.

Argued March 9, 1998.

Decided May 28, 1998.

---

Herald Price Fahringer, Erica T. Dubno (Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria), New York City, for Appellant.

Paul Weinstein, Assistant United States Attorney (Zachary W. Carter, United States Attorney), New York City, for Appellee.

Before: WALKER, OAKES, and MAGILL,* Circuit Judges.

MAGILL, Circuit Judge:

Raymond Polanco appeals his convictions on various federal offenses related to his operation of a drug and gun trafficking enterprise. Polanco contends that: (1) the government failed to prove an essential element of his conviction for committing murder for the purpose of increasing or maintaining his position in a criminal enterprise under 18 U.S.C. § 1959; (2) his convictions for conspiracy under 21 U.S.C. § 846 and engaging in a continuing criminal enterprise under 21 U.S.C. § 848 violated the Double Jeopardy Clause; (3) he was unfairly prejudiced by the introduction of evidence of a murder that was not related to his criminal enterprise; and (4) his convictions were not supported by the evidence. We agree only with Polanco's first two contentions and, thus, affirm in part, reverse in part, and vacate in part.

## I.

Viewing the evidence in the light most favorable to the verdict, appellant Raymond Polanco ran a narcotics and gun distribution organization in Brooklyn, New York (the Polanco Enterprise). The Polanco Enterprise consisted of more than five members who worked under Polanco's direction to distribute crack cocaine in the Gowanus Housing Project (the Project), a public housing complex located in Brooklyn. The Polanco Enterprise also included members specifically employed to rob and murder rival drug dealers in the Project so that Polanco could monopolize the drug trade within the Project. To this end, Polanco orchestrated the murder of Antonio Rivera and the attempted murder of Carlos Moreno, both of whom were Polanco's rivals.

In addition to selling crack cocaine in the Project, the Polanco Enterprise sold and distributed guns. Polanco sold guns to Lenin Sepulveda, the leader of a gang known as the Red Top Crew that distributed drugs in the Bronx, New York. Polanco supplied the Red Top Crew with handguns and machine guns. Each time Sepulveda purchased a machine gun from Polanco, Sepulveda would test the gun to verify that it was fully automatic before he would pay Polanco. During one machine gun sale, Sepulveda told Polanco "let's go to the highway [and] as soon as we get [to] the highway, we will test it [ (the machine gun) ] out." Tr. of Trial at 976 (Feb. 10, 1997). While Polanco drove Sepulveda to the highway, an innocent motorist, David Cargil, ran a red light and almost hit the car driven by Sepulveda's brother, which was in front of Polanco's car. In retaliation,

* The Honorable Frank Magill, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Sepulveda decided to "test" the gun by killing Cargil. Polanco sped after Cargil so that Sepulveda could take a clear shot. When the machine gun did not fire, Polanco attempted to fix the gun. After the machine gun jammed a second time, Sepulveda told Polanco that Sepulveda did not want the gun because the gun did not work. Polanco responded "yes, it works" and, this time, successfully repaired the gun. Sepulveda consequently shot and killed Cargil, enabling Polanco to consummate the sale.

On August 1, 1996, a thirteen-count indictment was issued naming Polanco as the sole defendant. In counts one, four, and five through thirteen (the Polanco Enterprise counts), the government charged Polanco with committing various illegal acts in connection with his operation of the Polanco Enterprise, including engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848, conspiring to distribute narcotics in violation of 21 U.S.C. § 846, and conducting the affairs of an enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). In counts two and three (the Red Top Crew counts), the government charged Polanco with murdering Cargil with a machine gun for the purpose of maintaining or increasing his position in the Red Top Crew in violation of 18 U.S.C. §§ 924(c) and 1959.

The jury returned a verdict of guilty on all counts except two of the Polanco Enterprise counts (counts six and seven). After the district court imposed a sentence of five consecutive life terms plus 120 years,[1] Polanco filed this appeal.

## II.

■ Polanco contends that his convictions on the Red Top Crew counts for violating §§ 924(c) and 1959(a) (counts two and three) should be reversed because the evidence is insufficient to support a finding that Polanco murdered Cargil for the purpose of maintaining or increasing his position in the Red Top Crew. When reviewing a claim for insufficiency of the evidence, this court views

"the evidence in the light most favorable to the government and ask[s] whether any rational juror could have reached a finding of guilt beyond a reasonable doubt." *United States v. Eltayib*, 88 F.3d 157, 171 (2d Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 619, 136 L.Ed.2d 543 (1996). "An appellant challenging the sufficiency of the evidence bears a very heavy burden," and a "jury's verdict will be sustained if there is substantial evidence to support·it." *United States v. Casamento,* 887 F.2d 1141, 1156 (2d Cir.1989).

■ We agree that the evidence is insufficient to support Polanco's convictions on the Red Top Crew counts. Count two was premised on 18 U.S.C. § 1959(a), which proscribes committing murder "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in·an enterprise engaged in racketeering activity...." 18 U.S.C. § 1959(a). The government specifically indicted and prosecuted Polanco on the theory that Polanco killed Cargil for the purpose of maintaining or increasing his position in the Red Top Crew. *See* Superseding Indictment ¶ 29, *reprinted in* App. at 30 (count two charging Polanco with murdering Cargil "for the purpose of maintaining and increasing [his] position in [the Red Top Crew]"); Tr. of Trial at 2527 (Mar. 5, 1997) (district court charging the jury that to convict Polanco under count two, they must find that Polanco participated in Cargil's murder "because he intended that it would help him maintain or even enhance his own position or prestige within the [Red Top Crew]").

Because the government elected to prosecute count two solely under this theory, the government bears the burden of proving:

(1) that the [Red Top Crew] was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3)· that [Polanco] had· a position in

---

**1.** Polanco received consecutive life sentences on counts one, two, four, eight, and nine; a consecutive ten-year sentence on count five; consecu- tive twenty-year sentences on counts ten through thirteen; and a consecutive thirty-year sentence on count three.

the enterprise, (4) that [Polanco] committed the alleged crime of violence, and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise.

*United States v. Concepcion,* 983 F.2d 369, 381 (2d Cir.1992). Polanco contends that the government failed to prove that Polanco had a position in the Red Top Crew and, therefore, that Cargil's murder could not have been intended to maintain or increase his position in the Red Top Crew. The government argues that Polanco had a position in the Red Top Crew because Polanco "supplied them weapons." Tr. of Trial at 2283 (Mar. 4, 1997); *see also* Appellee's Br. at 41. We agree with Polanco.

While § 1959(a) does not specifically define the phrase "for the purpose of ... maintaining or increasing position in an enterprise," its legislative history indicates that this phrase was enacted specifically to complement RICO by targeting criminal enterprise "members" who commit violent crimes "as an aspect of membership" in the enterprise. *See* S.Rep. No. 225, at 306, *reprinted in* 1984 USCCAN at 3486. Accordingly, the government must establish that Polanco "committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *Concepcion,* 983 F.2d at 381.

In this case, it is clear that Polanco was not a member of the Red Top Crew at the time of Cargil's murder. Viewing the evidence in the light most favorable to the government, the Red Top Crew was a drug trafficking enterprise that operated independently and in a different section of New York City from the Polanco Enterprise. No witnesses testified that Polanco was a member of the Red Top Crew. The only testimony on this question came from Sepulveda, who spe-

cifically testified that there were only three different positions in the Red Top Crew: "managers and pitchers and transporters," *see* Tr. of Trial at 930 (Feb. 10, 1997), and that Polanco was *not* a member of the Red Top Crew. *See id.* at 1069. No evidence suggests that Polanco held any of these positions in the Red Top Crew. Based on the evidence introduced at trial, Polanco was not involved with the Red Top Crew's drug trafficking at all; he did not buy drugs from, sell drugs to, or distribute drugs for, the Red Top Crew. While the evidence demonstrates that Polanco sold guns to the Red Top Crew, the evidence also clearly shows that Polanco's relationship with the Red Top Crew did not exceed a vendor-vendee relationship, and that Polanco had no role in determining how or why the Red Top Crew would use the guns. *See id.* at 967 (Sepulveda testifying that he was the person who decided "what was going to be done with" each gun purchased from Polanco). Because Polanco was not a member of the Red Top Crew, Cargil's murder could not have been committed for the purpose of maintaining or increasing Polanco's position in the Red Top Crew.[2]

Accordingly, we reverse Polanco's conviction on count two. Because we reverse this conviction, we also reverse his derivative conviction under 18 U.S.C. § 924(c) (count three) for utilizing a machine gun to murder Cargil. The jury instructions clearly permitted a conviction on this count only if the government proved that Polanco had a position in the Red Top Crew and murdered Cargil to maintain or increase his position in the Red Top Crew, *see* Tr. of Trial at 2536 (Mar. 5, 1997), and the government failed to offer such proof.

## III.

We now address Polanco's challenges to his convictions on the Polanco Enterprise

2. Our opinion should not be construed, however, as holding that a gun supplier to a criminal enterprise can never be prosecuted under § 1959(a) for his relationship to that enterprise. For example, it is possible that Polanco's sale of guns to the Red Top Crew might support a finding that Polanco participated in Cargil's murder for the purpose of "gaining entrance to" the Red Top Crew. 18 U.S.C. § 1959(a). Additionally, it is possible that evidence of Polanco's driving the

car during the test demonstration and repairing the machine gun so that Sepulveda could kill Cargil and Polanco could consummate the gun sale might support a finding that Polanco participated in Cargil's murder "as consideration for the receipt of ... anything of pecuniary value" from the Red Top Crew. *Id.* Because the government did not pursue these theories at trial, however, we will not now affirm the conviction on either of these bases.

counts. Polanco contends that the district court erred in entering a judgment of conviction both for conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 (count eight) and for engaging in a CCE in violation of 21 U.S.C. § 848 (count nine). He argues that convicting him on both counts violates the Double Jeopardy Clause of the Fifth Amendment. The government concedes this and we agree.

■ A conviction under both the conspiracy and the CCE statutes is unconstitutional where the alleged CCE is the same enterprise as the conspiracy. *See Rutledge v. United States,* 517 U.S. 292, 300, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). The alleged CCE—the Polanco Enterprise—is the same enterprise as the conspiracy, and Polanco's conviction for drug conspiracy under count eight of the indictment is vacated. However, we affirm Polanco's CCE conviction under count nine of the indictment. *See United States v. Miller,* 116 F.3d 641, 678 (2d Cir. 1997) (affirming CCE conviction despite remanding for dismissal of conspiracy conviction on Double Jeopardy grounds), *cert. denied,* —— U.S. ——, 118 S.Ct. 2063, 141 L.Ed.2d 140 (1998) (No. 97–7630), *and cert. denied,* —— U.S. ——, 118 S.Ct. 2063, —— L.Ed.2d —— (1998) (No. 97–8083).

## IV.

Polanco also contends that his RICO conviction under 18 U.S.C. § 1962(c) (count one) for operating the Polanco Enterprise should be reversed. The government prosecuted Polanco under § 1962(c), alleging that Polanco committed seven predicate racketeering acts while operating his drug and gun distribution enterprise, including murdering Rivera, murdering Cargil, attempting to murder Moreno, and distributing drugs on at least four different occasions. While not disputing the relevance of Rivera's murder and Moreno's attempted murder to the Polanco Enterprise, Polanco argues that Cargil's murder was not related to his operation of the Polanco Enterprise and, thus, could not be considered as a predicate act of the Polanco Enterprise. He also argues that the "irrelevant" evidence of Cargil's murder was unfairly prejudicial to Polanco at trial. We disagree.

■ Pursuant to § 1962(c), it is "unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The requisite pattern of racketeering activity may be established by demonstrating predicate acts that are related and pose a threat of continued criminal activity. *See United States v. Minicone,* 960 F.2d 1099, 1106 (2d Cir.1992). Predicate acts "must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)." *Id.* A predicate act is "related" to an enterprise if it is "related to the activities of that enterprise." *Id.* (quotations omitted). A predicate act is related to a different predicate act if each predicate act is related to the enterprise. *See id.* We believe that a rational jury could find that Polanco's participation in Cargil's murder was related to Polanco's RICO enterprise.

■ The evidence shows that Polanco, as the leader of the Polanco Enterprise, sold guns to Sepulveda and the Red Top Crew to earn money for the Polanco Enterprise and to cultivate a relationship with Sepulveda and the Red Top Crew. Polanco hoped the gun sales would persuade the Red Top Crew to join forces with his own organization and further increase his power in the Project. Thus, each machine gun sale to Sepulveda, including the sale of the machine gun used to murder Cargil, was related to Polanco's RICO enterprise.

Cargil's murder clearly was related to Polanco's sale of the machine gun to Sepulveda. Each time Polanco sold Sepulveda a machine gun, Sepulveda would first test the machine gun to make sure that it was fully automatic. Sepulveda would not pay for the machine gun unless he was satisfied that the gun was operational. During one such sale, Polanco drove Sepulveda to a highway so that Sepulveda could test the machine gun. Sepulveda tested the machine gun by attempting to shoot Cargil. When the machine gun jammed, Polanco repaired the gun so that Sepulveda could successfully shoot Cargil. A reasonable jury could easily conclude that shooting Cargil was a necessary precedent to

consummating the gun sale, and that Cargil's murder was part-and-parcel of the gun sale. Accordingly, we find that Polanco's participation in Cargil's murder was related to the weapons distribution activities of Polanco's RICO enterprise and the evidence thereof certainly was relevant to Polanco's RICO conviction.

## V.

Polanco also contends that his CCE conviction (count nine) should be reversed because the government failed to establish that the Polanco Enterprise consisted of at least five members whom Polanco supervised at the same time. We disagree.

Polanco first contends that the government must establish that he acted "in concert" with five other persons at the same time, and that evidence of five persons involved at various times does not support his CCE conviction. The Second Circuit has already rejected this argument. See United States v. Young, 745 F.2d 733, 747 (2d Cir.1984); see also United States v. Phibbs, 999 F.2d 1053, 1084–85 (6th Cir.1993) (noting that "[e]very circuit which has considered this argument has rejected it").

Polanco also contends that the government must identify the five people whom Polanco supervised by their full names, and that the government's identification of Polanco's supervisees only by first names or street names is insufficient. This argument ignores the fact that "[t]he CCE statute is directed against all enterprises of a certain size; the identity of those involved is irrelevant." United States v. Markowski, 772 F.2d 358, 364 (7th Cir.1985). Accordingly, it "is not necessary for the government to establish in every CCE case the specific identity of all five individuals subject to the defendant's direction." United States v. Alvarez, 860 F.2d 801, 817 (7th Cir.1988), aff'd in relevant part on reh'g sub nom. United States v. Holguin, 868 F.2d 201 (7th Cir.1989). Rather, the government need only "submit sufficient evidence to permit a rational jury to conclude that each of those [partially identified] individuals had been directed by the defendant." Id.; see also United States v. Walker, 912 F.Supp. 655, 662 (N.D.N.Y.1996)

(merely identifying supervisees by names of "Barney" and "Petey" is sufficient to support a CCE conviction because "[w]hile both individuals are somewhat sketchily identified there appears to be no indication that either is actually one of the other low-level sellers already identified as a CCE participant"), aff'd in part, rev'd in part on other grounds, 142 F.3d 103 (2d Cir.1998). In this case, there is abundant testimony indicating that Polanco supervised Michael Rivera, Stephen Almodoval, David Sanchez, Richard Mineo, Richard Mineo's brother "TK," Carmen Castro, a person named Jonathon, a person named Milagros or Milly, and others. Accordingly, we reject Polanco's contention that the government failed to sufficiently identify five persons whom he supervised in the CCE.

## VI.

Polanco also appeals the sentence imposed by the district court on the Polanco Enterprise counts. Polanco contends that receiving consecutive sentences for his RICO conviction under 18 U.S.C. § 1962(c) and for his convictions under 18 U.S.C. § 1959 for murdering Rivera and attempting to murder Moreno for the purpose of maintaining or increasing his position in the Polanco Enterprise, which were also charged as predicate acts in the RICO count, violates the Double Jeopardy Clause. We disagree.

"It is well settled that Congress sought to permit cumulative sentences for a RICO conviction and the predicate offenses upon which the RICO violation is premised." United States v. Walsh, 700 F.2d 846, 856 (2d Cir. 1983). Moreover, the Second Circuit has already held that the government may prosecute a defendant both under RICO for engaging in a pattern of racketeering activity and also under § 1959 for violent crimes intended to maintain or increase the defendant's position in the RICO enterprise. See Concepcion, 983 F.2d at 381. Accordingly, the district court did not err by imposing consecutive sentences for Polanco's RICO conviction and his substantive § 1959 convictions. See Walsh, 700 F.2d at 856 ("[W]here Congress has made sufficiently clear its intention to impose multiple punishments for

the same act, imposition of such punishment is constitutional.").

## VII.

Polanco raises numerous other issues in this appeal. Polanco contends that the indictment was multiplicitous, that prosecutor misconduct required a mistrial, that the district court erred in denying his request for a bill of particulars, and that the district court erred in removing a juror. After carefully reviewing the record, we determine that each of the arguments is meritless under the established law of the Second Circuit and does not require discussion. *See Casamento,* 887 F.2d at 1191 (refusing to discuss meritless arguments).

## VIII.

For the foregoing reasons, we REVERSE Raymond Polanco's convictions and sentences on counts two and three, VACATE Polanco's conviction on count eight, and AFFIRM the convictions and sentences in all other respects.