**UNITED STATES of America**

v.

**Gregory FERGUSON, Defendant.**

**No. S8 97 CR 786(SAS).**

United States District Court,
S.D. New York.

May 25, 1999.

M. Katherine Baird, Robin L. Baker, Mary Mulligan, Assistant United States Attorneys, New York City, for U.S.

Avraham Moskowitz, Moskowitz & Book, LLP, New York City, for Defendant.

## OPINION & ORDER

SCHEINDLIN, District Judge.

Indictment S8 97 CR 786 charged defendant Gregory Ferguson in eight counts. Count one charged Ferguson and others with participating in a racketeering enterprise known as Power Rules. Ferguson was charged with participating in four predicate acts: (1) the attempted murder of Alberto Mercado; (2) the conspiracy to murder Gregory Ayala; (3) witness tampering; and (4) threatening a United States Marshal. Count Two charged Ferguson and his co-defendants with a RICO conspiracy in connection with the activities of Power Rules. Ferguson was also charged with two counts of violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959, based on the attempted murder of Mercado and the conspiracy to murder Ayala and two counts of possessing weapons in connection with crimes of violence in violation of 18 U.S.C. § 924(c). Also charged was one count of witness tampering and one count of threatening a United States Marshal.[1]

1. The charge of threatening a U.S. Marshal was severed prior to trial and was dismissed

After a three-month trial, Ferguson was acquitted on five counts: the substantive RICO charge, the RICO conspiracy charge, the witness tampering charge, the violent crime in aid of racketeering charge based on the attempted murder of Albert Mercado and the related weapons charge. Ferguson was convicted, however, of one count of committing a violent crime in aid of racketeering based on the conspiracy to murder Gregory Ayala and the related weapons charge. It is for these convictions that Ferguson seeks a new trial pursuant to Federal Rule of Criminal Procedure 33. As explained below, because I conclude that Ferguson's trial was fundamentally unfair, his motion is granted and a new trial is ordered with respect to Counts 10 and 35.

### Factual Background Regarding the Enterprise

Power Rules, a gang that distributed heroin, cocaine and crack in the Bronx, is the RICO enterprise with which Ferguson was allegedly involved. Its leader, Miguel Guzman, a defendant at the trial, testified that it was made up of Spanish-speaking Puerto Ricans, most of whom lived on or near Union Avenue in the Bronx. *See* Trial Transcript ("Tr.") at 7699–7700. Power Rules operated from 1986 to 1997. *See* Indictment, ¶ 5. The primary purposes of Power Rules was the sale of drugs, extorting money or "rent" payments from other drug dealers, and the robbery of other drug dealers. *Id.,* ¶ 3. Power Rules often resorted to violence to protect itself and its members. *Id.* The Indictment charged that the gang members were responsible for four murders, *see* ¶¶ 7(b), 8(b), 9(d) and 39, thirteen attempted murders, *see* ¶¶ 7(a), 7(c), 12(a), 12(b), 14, 15(c), 16, 43, 45, 57, 65, 67 and 73, and many assaults. Gang members were routinely

armed with handguns, pistols and automatic weapons.

### Discussion

#### A. Rule 33 Standard

 A motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 may be granted "if the interests of justice so require." Fed.R.Crim.P. 33. Whether to grant a motion for a new trial pursuant to Rule 33 rests in the broad discretion of the trial judge. *United States v. Rodriguez,* 738 F.2d 13, 17 (1st Cir. 1984). The burden of proving the need for a new trial lies with the defendant. *United States v. Soblen,* 203 F.Supp. 542 (S.D.N.Y.1961), *aff'd,* 301 F.2d 236 (2d Cir. 1962). Unlike a Rule 29 motion, in deciding whether to grant a Rule 33 motion, a judge may weigh the evidence and determine the credibility of witnesses.[2] *United States v. Sanchez,* 969 F.2d 1409, 1413 (2d Cir.1992). The Court is not required to view the evidence in the light most favorable to the Government. *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir. 1980). The Court's discretion is, however, somewhat limited in that it should only grant a new trial when it "concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict [such] that a serious miscarriage of justice may have occurred." *Id.* Such motions are not favored and should be granted only with great caution in exceptional circumstances. *United States v. Costello,* 255 F.2d 876, 879 (2d Cir.1958); *Soblen,* 203 F.Supp. at 564. It is only where an injustice has been done such that an innocent person may have been convicted that there is a need for a new trial.

---

by a *nolle prosequi* on October 23, 1998.

**2.** "To say that a trial judge cannot make his or her own evaluation of the testimony of a witness in the context of a Rule 33 motion is to ignore the overwhelming weight of authority to the contrary." *Sanchez,* 969 F.2d at

1413 (citation omitted). However, the Court may only intrude upon the jury's assessment of credibility in exceptional circumstances. *United States v. Leon–Lopez,* 891 F.Supp. 138, 148 (S.D.N.Y.1995), *aff'd,* 101 F.3d 109 (2d Cir.1996).

*Sanchez*, 969 F.2d at 1414.[3]

## B. Proof of Motivation Element

### 1. The Government's Presentation of the Three Theories of Motivation

#### a. The Indictment and the Charge

The statute governing violent crimes in aid of racketeering activity provides:

> Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished...

18 U.S.C. § 1959(a). Here, the Government charged that Ferguson conspired to kill Ayala for one or more of the three purposes set forth in the statute: (1) for pecuniary gain; (2) for the purpose of gaining entry to Power Rules; and/or (3) for the purpose of maintaining or increasing his position in Power Rules. *See* Indictment at ¶ 51. In addition, all three motives were included in the jury charge. *See* Tr. at 9171–72. Specifically, the jury was charged as follows:

> As you consider Counts Three through Twenty–One, the last element I will instruct you on is the one which requires the Government to prove that the defendant you are considering acted either:

> (1) in consideration of the receipt of, or in consideration of a promise or agreement to pay, something of value from the enterprise; or (2) for the purpose of gaining entrance to, maintaining or increasing his position in that enterprise.

> The words "in consideration of," "receipt," and "a promise or agreement to pay [something] of pecuniary value from [the] enterprise" should be given their ordinary meaning, that is, the Government must prove that the defendant believed that he would receive something valuable from the enterprise in exchange for committing the crime alleged.

> Alternatively, to establish that the defendant committed the crime alleged for the purpose of "gaining entrance to or maintaining or increasing" his position in the enterprise, the Government must prove that the defendant's general purpose in committing the crime in question was to gain entrance to, to increase [sic], maintain his position in the enterprise. Self-promotion need not have been the defendant's only, or even his primary concern, if it was committed as an integral aspect of membership in the enterprise. It is not necessary that the defendant be a formal member of the enterprise. The motive requirement is satisfied if the defendant committed the crime because it would allow him to gain entrance to that enterprise, because he knew it was expected of him by reason of his association with the enterprise, or because it would enhance his position or prestige within the enterprise.[4]

Tr. at 9174–76. The jury was not asked to identify which purpose it found had motivated Ferguson to kill Ayala.[5]

---

**3.** "Innocent," of course, must mean innocent of the *crime charged. See, e.g., United States v. Thai*, 29 F.3d 785, 818–19 (2d Cir.1994) (while it was obvious that defendant had conspired to bomb a restaurant, he was not guilty of doing so in aid of racketeering because there was a failure of proof on the motivational element).

**4.** This charge was based on the charge approved by the Court of Appeals in *United States v. Locascio*, 6 F.3d 924, 940 (2d Cir. 1993) (quoting *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir.1992)).

**5.** Although not required by law, the use of a special verdict form identifying which motivation the jury found is permitted and would have been advisable in this case. *See United*

### b. The Government's Opening Statement

In its opening statement, the Government did not tell the jury that it intended to prove that Ferguson committed the alleged violent acts for the purpose of gaining entry into Power Rules or for the purpose of increasing or maintaining his position in the enterprise. In fact, the Government appeared to concede that Ferguson had no position in the enterprise and sought none. The Government argued that his sole motivation was pecuniary gain. *See* Tr. at 89, 96 (Ferguson was not part of the day-to-day operations of Power Rules—he was an outside hit man hired by Guzman to kill Gregory Ayala).[6]

### c. The Goverment's Summation

Nor did the Government appear to rely on the "gaining entrance" or "maintaining or increasing position" prongs during the trial, instead concentrating on the pecuniary benefit prong. In a lengthy closing argument and rebuttal, the Government never summarized any "gaining entrance" or "maintaining or increasing position" evidence or argued either of these prongs to the jury. *See* Tr. at 8269 (more limited involvement of Ferguson was that of a hired gun who became associated with Power Rules in the 1995 to 1996 time period); Tr. at 8912 (some witnesses never thought of Ferguson as being in Power Rules).[7]

States v. Reed, 147 F.3d 1178, 1181 (9th Cir. 1998) (district court did not abuse its discretion in submitting special verdict on defendant's perjury charge requesting identification of specific false statements made before the grand jury—"[w]here a special verdict form requires the jury to determine the occurrence of any of a series of acts, each of which is sufficient to constitute the indicted crime, the traditional concerns regarding special verdicts are not implicated"). As any of the three motivations would have sufficed to support defendant's § 1959 conviction, the use of a special verdict here is "no more coercive than listing the predicate acts in a RICO charge or the objects in a conspiracy case." *Id.* at 1182. The fact that one was not used here supports the need for a new trial. *But see Griffin v. United States*, 502 U.S. 46, 56–57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (restating prevailing rule that "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as [defendant's] indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged") (quoting *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970)). Although *Griffin* rejected the Second Circuit's holding in *United States v. Garcia*, 907 F.2d 380, 384 (2d Cir.1990), wherein a judgment of conviction was reversed on the ground that the trial court's failure to use a special verdict prevented the reviewing court from knowing if the jury had relied on a theory for which there was insufficient evidence, the Supreme Court did state:

What we have said today does not mean that a district court cannot, in its discretion, give an instruction of the sort petitioner requested here, eliminating from the

jury's consideration an alternative basis of liability that does not have adequate evidentiary support. Indeed, if the evidence is insufficient to support an alternative legal theory of liability, *it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration.*

*Griffin*, 502 U.S. at 60, 112 S.Ct. 466. I now conclude that it was error to have charged on all three of the motivational alternatives merely because they were charged in the Indictment. On re-trial, if the proof is insufficient on any of these three theories, I will decline to charge that theory. Alternatively, if I give all three theories to the jury, I would ask that they indicate which one or more of those theories they find are "proven" beyond a reasonable doubt.

6. Interestingly, all of the Presentence Reports on the co-defendants identify Ferguson as "hired by Guzman on a contractual basis to effect the murder of Gregory Ayala." *See* Guzman Presentence Report, at ¶ 101. By contrast, for example, Nicholas Ortiz is identified as a member of Power Rules who participated in the extortion activity against the competitive narcotic traffickers; and Samuel James Smith is identified as a participant in the drug trafficking aspects of Power Rules. *See id.*, at ¶¶ 98, 96.

7. Defendant's counsel, Avraham Moskowitz, did not even address the "gaining entrance" or "maintaining or increasing position" prongs in his summation. He did, however, refer to the pecuniary benefit prong when he stated that it would take a great leap of faith to infer that the payment from Guzman to

#### d. The Rule 29 Argument

Nonetheless, in its opposition to Ferguson's Rule 29 motion, the Government argued that Luis Soto, a cooperating witness and former member of Power Rules, testified that Ferguson first became "associated with" Power Rules in 1996. Tr. at 1147, 2103. The Government also argued that there was sufficient evidence connecting Ferguson to the conspiracy to murder Ayala to support his conviction. In ruling on Ferguson's Rule 29 motion, I summarized this evidence. *See* Transcript of June 18, 1998 Conference, pp. 6–7. Such evidence included, *inter alia*, the 02 cab incident, the Jamaican hat incident, and the Albert Mercado shooting.[8]

In the 02 cab incident, both David Rivera and Rafael Lebron (members of Power Rules) testified that Miguel Guzman (leader of Power Rules) provided guns to David Rivera, Edwin Rivera (another member of Power Rules), Rafael Lebron and Ferguson and directed them to hire a gypsy cab in order to locate and shoot Gregory Ayala. The group searched for Ayala at a number of locations but, having no luck in finding him, returned to Miguel Guzman's apartment building. David Rivera also testified that on another occasion, pursuant to a plan devised by Miguel Guzman, he and Ferguson went to Avenue St. John to find and kill Ayala. On that occasion, David Rivera was wearing a hat with fake dreadlocks as a Jamaican disguise. Both were carrying weapons. Regarding the Albert Mercado shooting, Rafael Lebron testified that Miguel Guzman told him and Ferguson to go shoot "Spanish Greggo" [Gregory Ayala] and they agreed. In preparation for the attack, Guzman handed out guns and bullet proof vests to Lebron and Ferguson. Once armed, Ferguson and Lebron went with Nick Ortiz (a member of Power Rules) in a Blazer to meet Luis Soto, who was to point out Ayala to the trigger-men. In addition to these missions, there was also testimony from Elizabeth Perez (Guzman's ex-girlfriend) that Miguel Guzman spoke with Ferguson about killing Ayala.

The Government argued that these acts proved Ferguson's close connection with core members of Power Rules and his ongoing efforts to further a key goal of the enterprise—the elimination of rival drug dealer Gregory Ayala. According to the Government, these joint efforts with Power Rules' members, coupled with Ferguson's ongoing association with Miguel Guzman, support a finding that his motive was to gain entry into or maintain or increase his position within Power Rules.

#### e. The Rule 29 Decision

In denying Ferguson's Rule 29 motion, I held that:

> [t]he government's evidence shows that Guzman directed Ferguson and "core members" of Power Rules to kill Ayala. Ferguson and the core members obtained weapons, bulletproof vests, and/or disguises from Guzman before going out to find Ayala. Ferguson only attempted to carry out Guzman's plan to kill Ayala when he was accompanied by the core members—never by himself. Based on Ferguson's joint efforts with Power Rules' members to kill one of the gang's adversaries, at Guzman's direction, a juror could reasonably infer that Ferguson's motive for committing the crime was to gain membership in Power Rules or to advance his position in the enterprise.

*See* Tr. from June 18, 1998 conference, pp. 8–9.

Ferguson, *see infra*, was payment for the shooting of Albert Mercado. *See* Tr. at 8753. The fact that Mr. Moskowitz did not even address the first two prongs is further support that the Government effectively abandoned these theories during the course of the trial.

8. Whether the circumstances surrounding the Mercado shooting can be viewed as evidence of course of conduct is suspect given Ferguson's acquittal on this count.

**f. The Government's Post–Trial Briefing**

In its post-trial brief, the Government again argues that the evidence that Ferguson acted for the purpose of "gaining entrance to" and "maintaining position" in Power Rules was sufficient. According to the Government's theory, proof that Ferguson acted jointly with core members of Power Rules to kill one of the gang's rivals is sufficient to support the conclusion that Ferguson's motive was to gain entrance into or increase his position within Power Rules. *See* Government's Memorandum of Law in Response to Defendants' Post–Trial Motions for Acquittal Pursuant to Rule 29(c) and a New Trial Pursuant to Rule 33, at pp. 58–62. The Government also argues that it proved that Ferguson acted in return for a receipt of a pecuniary benefit.

**2. Gaining Entry/Maintaining or Increasing Position**

█ "By its ordinary usage, the phrase 'for the purpose of ... maintaining or increasing position in' the enterprise means that the defendant had to have held a position in the enterprise and committed the charged underlying crime of violence with a motive of retaining or enhancing that position." *United States v. Muyet*, 994 F.Supp. 550, 555 (S.D.N.Y.1998) (citing *United States v. Concepcion*, 983 F.2d at 381). Based on a careful review of the evidence, I now conclude that no reasonable juror could have found that Ferguson's motivation for attempting to shoot Ayala was to "maintain or increase [his] position" in Power Rules as there was no credible evidence that he was a member of Power Rules.[9] Indeed, as noted earlier, the Government never asked the jury to make such a finding.

In certain cases, when a defendant repeatedly engages in criminal conduct with other gang members and those actions encompass the goals of the conspiracy, then that participation may indeed be sufficient to prove membership. *See United States v. Mapp*, 170 F.3d 328, 336 (2d Cir.1999) (defendant was member of robbery gang where Government offered evidence of five robberies). Here, the record is bereft of evidence that Ferguson engaged in any of Power Rules' core activities (drug sales, extortion, robbery). Rather, the proof is that on two isolated occasions, Ferguson participated with gang members in a conspiracy to kill Gregory Ayala, a rival drug dealer. This conduct, in the absence of any further evidence, is not sufficient to establish membership in Power Rules. *See United States v. Polanco*, 145 F.3d 536, 540 (2d Cir.1998) (defendant who merely sold guns to a gang and was not involved in its drug trafficking activities was not a member of the gang—defendant's § 1959 conviction reversed because his involvement in the murder of an innocent bystander with the gang's leader could not have been committed for the purpose of maintaining or increasing his position in the gang as he was not a member of the gang). Nor was Ferguson involved in the planning of Power Rules' other illegal activities. *See also Thai*, 29 F.3d at 818 (no evidence of maintaining or increasing position motivation simply from the fact that the bombing of an Asian restaurant was done by a leader of a gang that earned money by committing violent crimes against Asians). *Cf. United States v. Muyet*, 994 F.Supp. 501, 516 (S.D.N.Y.1998) (defendant closely associated with gang who attended gang

---

9. If the Government had only charged that Ferguson's motivation was gaining entrance into or maintaining or increasing position in the enterprise, I would now reverse my earlier decision and grant defendant's Rule 29 motion. However, because all three theories were included in the indictment and the jury charge, I continue to believe that the standard for granting the Rule 29 motion was not met

because a reasonable juror could have concluded that Ferguson was paid by Guzman on behalf of Power Rules for his role in the conspiracy to murder Ayala. During a retrial, however, if the evidence regarding gaining entrance into/maintaining or increasing position is the same as it was during the first trial, I will decline to charge the jury on these theories of motivation.

meetings at which murders and other violent crimes were planned and who himself exercised discretion in committing them played some role in the operation, management or direction of the enterprise).

The same is true of the "gaining entrance to" prong of the test. There is simply no credible evidence that Ferguson sought to become a member of Power Rules.[10] Nor did he commit any substantive crimes on behalf of Power Rules in an attempt to seek membership. *See United States v. Brady*, 26 F.3d 282, 290 (2d Cir. 1994) (an associate of the Colombo Family is "an individual aspiring to become a member or who commits crimes under the protection of the family, but cannot become a member because of lack of Italian lineage"). At most, the jury found that Ferguson participated in two failed attempts to find and kill Ayala. This does not rise to the level of activity necessary to support a finding of membership or a desire to become a member.

### 3. The Pecuniary Motive

██ The only evidence that Ferguson's motivation in conspiring to kill Ayala was to obtain a pecuniary benefit came from cooperating witness Luis Soto. On direct examination, Mr. Soto testified as follows:

Q: After she took the bag, put it in her pants and left, what happened next?

A: We were in the hallway for a little while and Miguel gave Dread [Ferguson] some money.

Q: How much money did Miguel give to Dread?

A: I don't know.

Q: Did they have any conversation about the money?

A: Nope.

Q: Did anyone ever discuss with you the money that Miguel gave to Dread that day?

A: Nope.

Q: Did Dread say anything on that occasion?

A: No, he just left.

Tr. at 1291–92. Then, on cross-examination, Luis Soto testified:

Q: You're able to tie together the cookie jar incident with the third meeting or the third time you saw Dread, correct?

A: Correct.

Q: And you're sure that this took place after the shooting of Albert Mercado, correct?

A: I believe so.

Q: And you specifically recall on that occasion Mr. Guzman giving Dread some money, correct?

A: Correct.

Q: You don't know how much money, correct?

A: Nope.

Q: And there was no discussion about the money, correct?

A: Correct.

Q: You don't know what it was for, correct?

A: Correct.

Q: Now, was the money a wad of bills?

A: Yep.

Q: Were they singles, tens, fives?

A: I'm not sure. I didn't tell him to see the money.

Q: Was it a loose wad, was it wrapped in any way?

A: I'm not sure. He just pass it to me.

---

10. Indeed, even if he wanted to, it is highly unlikely that Ferguson would ever have been admitted into Power Rules. According to the testimony of Miguel Guzman, Power Rules was made up of Puerto Ricans, most of whom lived in or around Union Avenue. *See* Tr. at 7699–7700. The Government offered no evidence that Ferguson lived on or near Union Avenue or that he is Puerto Rican. In fact, he appears to be a black man of non-Hispanic origin. As such, it would appear that he did not have two of the criteria necessary to become a member of Power Rules. *Cf. United States v. Diaz*, 96 CR 1011, slip op. at 3320 (2d Cir. May 4, 1999) (noting in passing that Bond was not a member of the Latin Kings because he was African American).

Q: Was it in a bag?

A: No, it wasn't.

Q: Was it a big wad of bills, a stack, was it a small wad?

A: Like a handful.

Q: Just a handful?

A: I believe so.

Q: And you couldn't tell the denominations, correct?

A: Correct.

Q: And Dread didn't say anything about it at the time, correct?

A: I believe so, correct.

Q: He didn't complain that there wasn't enough money there, correct?

A: He didn't say nothing.

Tr. at 2058–59.

Even assuming Luis Soto to be a credible witness, which is a weak assumption, and that the payment described above actually took place, I find the evidence too slender a reed to support a guilty verdict against Ferguson. The jury's conclusion that Power Rules, as a RICO enterprise, agreed to and did pay Gregory Ferguson for his agreement to murder Gregory Ayala based solely on Miguel Guzman handing Ferguson a handful of cash is contrary to the weight of the evidence. Soto did not know the amount of the payment or its purpose. No evidence was offered as to any discussions—preceding, contemporaneously, or after the payment—as to what the money was for. *Cf. Muyet,* 994 F.Supp. at 519 (evidence presented was sufficient to allow a reasonable jury to find that defendant Feliciano was promised or received payment for his role in the Salcedo shootings—a witness testified that he overheard John Muyet discuss the hiring of "freelancers" to "take care of" the Salcedos and after the shootings the witness overheard Muyet discuss the payment to Feliciano). The payment could just as easily have been for an innocent purpose

or even for a criminal purpose unrelated to the murder of Gregory Ayala. The payment could have been by Guzman for a personal reason or made on behalf of Power Rules. Neither of these purposes (innocent purpose or criminally unrelated purpose) would support a conviction of Ferguson for violating 18 U.S.C. § 1959.

Solely from Soto's testimony, however, the jury inferred that the payment from Guzman was made on behalf of Power Rules as remuneration for Ferguson's promise to murder Ayala. This inference is unsupported by any other evidence and cannot sustain the guilty verdict. "Where there is any doubt that the evidence fully supports a jury determination, a new trial is the appropriate remedy to insure defendant the full extent of his rights." *United States v. Simms,* 508 F.Supp. 1188, 1208 (W.D.La.1980) (new trial granted where "the conclusion that defendant knowingly and intentionally agreed to purchase votes can only be reached from compound inferences based upon the testimony of witnesses whose credibility is, in some instances, suspect"); *see also United States v. Autuori,* 96 CR 161, 1998 WL 774232, at *29 (D.Conn. Aug.28, 1998) (question for judge in granting a new trial is whether she is satisfied that competent, satisfactory and sufficient evidence in the record supports the jury's finding of guilt beyond a reasonable doubt); *United States v. Robinson,* 71 F.Supp. 9, 12 (D.D.C.1947) ("a judge may set a verdict aside as contrary to the weight of evidence and grant a new trial, even if there was substantial evidence requiring him to submit the issues to the determination of a jury"). In the interest of justice, I find that the jury's verdict on Counts 10 and 35 is against the weight of the evidence and cannot stand.[11] Defendant's motion for a new trial on these counts is hereby granted.

**11.** Count 35 is predicated on 18 U.S.C. § 924(c) which imposes a consecutive five-year sentence when a firearm is used in relation to a crime of violence. Because I have

granted a new trial on Ferguson's § 1959 conviction, perforce, I must grant a new trial on the related § 924 conviction.

The conclusion to grant a new trial is not in conflict with my earlier ruling denying Ferguson's Rule 29 motion. In that context, drawing every inference in favor of the Government, I found the evidence sufficient to support a finding of guilt beyond a reasonable doubt. On a Rule 33 motion, however, I am entitled to weigh the evidence, or lack thereof. *Simms*, 508 F.Supp. at 1204 (a Rule 33 motion calls upon the Court to "examine the evidence under a different standard wherein the Court has broad power to evaluate all of the testimony and to make such credibility choices and inferences as are reasonably dictated by the record"). The Court's "discretion to review the evidence is much wider upon motion for new trial than on judgment of acquittal" because of the "differing effects upon the trial process the two rulings have." *Id.* As the court in *Robinson* stated:

> There is no incongruity or inconsistency in requiring the Court to submit the issues to the jury if there is substantial evidence to support a verdict of guilty, and at the same time in empowering it to set the verdict aside if it is deemed contrary to the weight of the evidence. In directing a judgment of acquittal, the Court makes a final disposition of the case. On the other hand, in setting the verdict aside the Court merely grants a new trial and submits the issues for determination by another jury. It is appropriate that in the latter instance, the Court should have wide discretion in the interest of justice.

*Robinson*, 71 F.Supp. at 11.

### C. Additional Grounds

There are other reasons that support granting Ferguson a new trial. For example, the jury may have been unduly influenced in its disposition of the § 1959 counts by the allegations in the RICO and RICO conspiracy counts. In Count 1 of the Indictment, Ferguson was charged with four predicate acts supporting his participation in a RICO enterprise (attempted murder of Mercado, conspiracy to murder Ayala, witness tampering and threatening a U.S. Marshal). In Count 2, Ferguson was charged with conspiracy in connection with the activities of Power Rules. He was, however, acquitted of both counts. Second, "the possible cumulative adverse affect that the various unproven charges [*e.g.*, the attempted murder of Alberto Mercado] may have had upon the juror's deliberations" could have substantially prejudiced the defendant. *See United States v. Sam Goody, Inc.*, 518 F.Supp. 1223, 1225 (E.D.N.Y.1981), *appeal dismissed by*, 675 F.2d 17 (2d Cir.1982), *superseded by statute in*, *United States v. Hundley*, 858 F.2d 58 (2d Cir.1988) (earlier ruling that order granting a new trial was not sufficiently final to give the Government a right to appeal superseded by Comprehensive Crime Control Act of 1984 which now permits such appeals). In this vein, even my decision refusing to sever Ferguson's trial from that of the core members of Power Rules supports a new trial. *See United States v. McAllister*, 91 CR 49, 1992 WL 363601 (D.Conn. Nov.12, 1992) (motion for new trial granted because of failure to sever defendant's trial from that of co-defendant). The jury was exposed to weeks of testimony regarding successful murders and assaults, none of which involved Ferguson. The chance that this parade of violence unfairly prejudiced Ferguson's right to a fair trial is just too great to ignore.

### Conclusion

For the reasons set forth above, a new trial is ordered as to Counts 10 and 35 of Indictment S8 97 CR 786. The scheduling of this trial will be discussed at a conference to be held on June 1, 1998 at 3:30 p.m.

SO ORDERED: