UNITED STATES of America,
Appellee,

v.

Louis DAIDONE, Defendant–Appellant.

Docket No. 04–3784–cr.

United States Court of Appeals,
Second Circuit.

Argued: April 27, 2005.

Decided: Dec. 15, 2006.

John W. Mitchell, New York, NY, for Appellant.

Karl Metzner, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Diane Gujarati, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Before NEWMAN, McLAUGHLIN, HALL, Circuit Judges.

PER CURIAM.

This case requires us to confront again the "relatedness" requirement for establishing a pattern of racketeering activity for purposes of obtaining a conviction under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. Appellant Louis Daidone was charged with racketeering, racketeering conspiracy, witness tampering by murder, conspiracy to make extortionate loans, and conspiracy to collect extensions of credit by extortionate means. A jury convicted Daidone of all five charged offenses, and this appeal followed. For the reasons set forth below, the judgment of the district court is affirmed.

## I. Background

Daidone, a member of the Luchese [1] organized crime family, was charged in a five-count indictment in the United States District Court for the Southern District of New York. Count One charged him with participating in a racketeering enterprise in violation of 18 U.S.C. § 1962(c); Count Two charged him with racketeering conspiracy in violation of 18 U.S.C. § 1962(d); Count Three charged him with witness tampering by murder in violation of 18 U.S.C. § 1512(a)(1); Count Four charged him with conspiracy to make extortionate

---

**1.** Some sources employ the spelling "Luchese." We adopt "Luchese," the spelling used by the district court.

loans in violation of 18 U.S.C. § 892; and Count Five charged him with conspiracy to collect loans by extortionate means in violation of 18 U.S.C. § 894. A jury convicted Daidone of all five counts, and the district court sentenced him principally to imprisonment for three life terms and two twenty-year terms, all to run concurrently.

The facts underlying Daidone's conviction, which we view in the light most favorable to the government, *see United States v. Eltayib*, 88 F.3d 157, 171 (2d Cir.1996), are straightforward. As a member of the Luchese Organized Crime Family, Daidone orchestrated the murders of Luchese associates Thomas "Red" Gilmore and Bruno Facciolo, and was involved in loansharking operations. The predicate acts for the RICO convictions, which 18 U.S.C. §§ 1961(5) & 1962(c) require the government to prove, were the Gilmore murder, the Facciolo murder, and the loansharking, charged as Racketeering Acts One, Two, and Three, respectively. The witness tampering conviction is based on the Facciolo murder, and the convictions on Counts Four and Five arise from Daidone's loansharking operations.

### A. The Murder of Thomas Gilmore

Thomas Gilmore ran a chop shop and operated a limousine service. After various Luchese members became suspicious of Gilmore in late 1988, then-boss Vic Amuso instructed Daidone to kill him. After one failed attempt, in February 1989 Daidone and two associates hid at Gilmore's house to await his return. Under Daidone's supervision, the two associates ambushed Gilmore as he returned to his apartment and shot him three times in the head. Gilmore died within minutes.

### B. The Murder of Bruno Facciolo

Later in 1989, Luchese leaders learned that another family associate, Bruno Fac-

ciolo, was cooperating with authorities regarding an investigation in California into a murder orchestrated by the Luchese family. Daidone, on the orders of his superiors, designed a ruse to trap and kill Facciolo. Specifically, Daidone pretended he needed a formal introduction to a mafia member from another crime family, and he asked Facciolo to make this introduction for him. Unaware of Daidone's true intent, Facciolo drove him to a local garage. Once there, Daidone restrained Facciolo while Lasorino, a Luchese associate who had been waiting at the garage, stabbed him repeatedly in the chest. Lasorino then shot Facciolo in the head and chest, killing him. Finally, Daidone placed a dead canary in Facciolo's mouth in an effort to warn others not to "sing."

### C. The Loansharking

The government's evidence showed that as early as 1988 Daidone was extensively involved in making and collecting various extortionate loans. In June 1996, even though Daidone was in prison, he had around $80,000 in loans owed to him by others. The government established at trial that between 1997 and 1999 Daidone was involved in a number of extortionate loans, which varied in amount from $25,000 to a proposed two-million dollar deal.

### II. Daidone's Arguments on Appeal

Daidone raises several issues on appeal, some of which are addressed below. First, Daidone contends that the convictions on Count Three, charging him with witness tampering by murder, should be reversed because the prosecution was barred by the statute of limitations, and because the jury was not charged on the element of premeditation. Next, Daidone argues the Southern District of New York was an improper venue in which to bring Count Three. Third, Daidone challenges the ad-

mission into evidence of uncharged racketeering acts as highly prejudicial and unnecessary to the government's case. Fourth, Daidone alleges the court's use of Sentencing Guidelines to calculate his imposed sentence violated his constitutional rights, and, fifth, he asserts that if the challenged convictions as to RICO are overturned, the "spillover prejudice" that results from the evidence on those counts requires the reversal of the loansharking count.

The crux of Daidone's appeal is his assertion that the government failed to prove that the predicate acts alleged in the racketeering counts formed a unitary "pattern of racketeering activity" indispensable to a prosecution arising under either 18 U.S.C. § 1962(c) or (d). As alleged in the indictment, Racketeering Act One was the murder and the conspiracy to murder Thomas Gilmore; Racketeering Act Two was the murder and conspiracy to murder Bruno Facciolo; and Racketeering Act Three was the loansharking business. Daidone argues that these three acts "were committed years apart, by different people and for entirely different reasons," and could thus not establish a pattern of racketeering activity as required by 18 U.S.C. § 1962(c). He contends that instead of independently establishing the requirements for proving a pattern of racketeering activity—which requires proving both horizontal and vertical relatedness—the government improperly used what was essentially the same evidence to prove both avenues of relatedness.

Daidone asserts that the test for horizontal relatedness derives from the test set forth by the Supreme Court in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), to determine whether the charged acts of racketeering activity constitute a pattern. He argues that in order for there

to be horizontal relatedness, the predicate crimes must have "the same or similar purposes, results, participants, victims, or methods of commission," or the crimes must be otherwise "interrelated by distinguishing characteristics and ... not isolated events," *see id.* at 240, 109 S.Ct. 2893 (internal quotation omitted) (discussing concepts by which criminal conduct can be found to form a pattern), elements he asserts are missing from the predicate crimes here. Thus, argues Daidone, allowing the government to establish horizontal and vertical relatedness with essentially the same evidence—showing that each act is related to the main criminal enterprise—without proving the *H.J. Inc.* factors, "dilute[s] the nature and quantum of proof necessary to convict" and is "at odds with the Supreme Court's holding as to what must be shown to justify the inclusion of given predicate acts in a single pattern of racketeering activity."

### III. Discussion

### A. Pattern of Racketeering Activity

Section 1962(c) prohibits "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." As stated, Daidone generally contests the government's ability to prove this pattern of racketeering activity through the alleged predicate acts.

Under the RICO statute, a " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this [statute] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Since the enactment of RICO, this Court has afforded the term

"pattern of racketeering activity" a "generous reading," *United States v. Indelicato,* 865 F.2d 1370, 1373 (2d Cir.1989) (en banc), and has "interpreted [it] to mean 'multiple racketeering predicates—which can be part of a single 'scheme'—that are related and that amount to, or threaten the likelihood of, continued criminal activity,'" *United States v. Reifler,* 446 F.3d 65, 91 (2d Cir.2006) (noting that evidence of a defendant's ties to organized crime is admissible to prove a RICO offense) (quoting *United States v. Coiro,* 922 F.2d 1008, 1016 (2d Cir.1991)). The Supreme Court has held that "to prove a pattern of racketeering activity a ... prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. 2893. Because Daidone does not challenge continuity, only relatedness is at issue in this case.

▆▆▆ According to the Supreme Court, criminal conduct forms a pattern of racketeering activity under RICO when it "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. 2893 (internal quotation marks omitted). This Court has further developed this requirement of "relatedness," holding that predicate acts "must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)." *United States v. Minicone,* 960 F.2d 1099, 1106 (2d Cir.1992). To show that the predicate acts are vertically related to the RICO enterprise, the government must establish (1) that the defendant "was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs

of the enterprise," or (2) that "the predicate offenses are related to the activities of that enterprise." *Id.* (internal quotation marks and emphasis omitted). One way to show that predicate acts are horizontally related to each other is to show that each predicate act is related to the RICO enterprise. *United States v. Polanco,* 145 F.3d 536, 541 (2d Cir.1998) ("A predicate act is related to a different predicate act if each predicate act is related to the enterprise."). Accordingly, the requirements of horizontal relatedness can be established by linking each predicate act to the enterprise, although the same or similar proof may also establish vertical relatedness. *See id.* (establishing horizontal relatedness by showing predicate acts are related to the enterprise); *Minicone,* 960 F.2d at 1106 (establishing vertical relatedness by showing predicate offenses are related to enterprise).

As a threshold matter, we note that this Court has an estimable line of cases on the subject of a racketeering pattern, *see Indelicato,* 865 F.2d at 1373–75 (discussing cases), and while the enigmatic "pattern of racketeering activity" concept is not necessarily subject to a precise definition, sufficient jurisprudence exists to illuminate the relatedness requirements. Daidone's reading of *H.J. Inc.* as delineating specific requirements for finding horizontal relatedness distinct from vertical relatedness simply creates an overly formal conception of this element, and Daidone pushes a far too constrained reading of the Supreme Court's language in *H.J. Inc.* We read the list for finding a criminal pattern discussed in that case to be merely a guidepost, a starting point for the relatedness inquiry as a *whole,* not a list of elements, each of which must be proven in order to establish a pattern of racketeering activity.

▆▆▆ In essence, the overall pattern requirement, of which relatedness is one

component, is a bulwark against "the application of RICO to the perpetrators of 'isolated' or 'sporadic' criminal acts." *Minicone*, 960 F.2d at 1106 (quoting *Indelicato*, 865 F.2d at 1383). Thus, it is with an eye toward that outer limit that we consider whether predicate racketeering acts are related enough to form a pattern. To form a pattern of racketeering activity, predicate acts must be related to each other and to the enterprise. That is the thrust of our vertical and horizontal relatedness inquiries. *See, e.g., Polanco*, 145 F.3d at 541; *Minicone*, 960 F.2d at 1106.

■ As evidenced here, both the vertical and horizontal relationships are generally satisfied by linking each predicate act to the enterprise. This is because predicate crimes will share common goals (increasing and protecting the financial position of the enterprise) and common victims (e.g., those who threaten its goals), and will draw their participants from the same pool of associates (those who are members and associates of the enterprise). Because of this intertwined relationship, sprawling, complex enterprises, like the Luchese crime organization, are the prototypical targets of RICO. *See Minicone*, 960 F.2d at 1108 ("The question of whether acts form a pattern rarely is a problem with a criminal enterprise, as distinct from a lawful enterprise that commits occasional criminal acts." (internal quotation marks omitted)).

■ Although evidence that predicate acts may be related to each other where they were carried out for "the same or similar purposes" might also be evidence that the predicate acts are part of the same enterprise, this overlap merely furthers the overall relatedness requirement elemental in RICO prosecutions. *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. 2893. Requiring inquiries into horizontal and vertical relatedness places limits on the outer

reach of RICO liability. The necessity of proving such relationships, however, does not prohibit a RICO conviction merely because it is formed on a pattern of racketeering activity proven by overlapping evidence tending to establish proof satisfying both inquiries. Indeed, the overlapping of evidence that occurs when establishing that the predicate acts are related to each other and to the enterprise is a familiar phenomenon in RICO cases. *See Indelicato*, 865 F.2d at 1384 (noting that proof of racketeering acts and proof of enterprise in "establishment of a[n] [18 U.S.C. § 1962(c)] violation will often entail overlap, for each act of racketeering activity will be related to the enterprise since the latter's affairs are by hypothesis·conducted through a pattern of such acts"); *United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir. 1983) (noting that "proof of these separate elements [need not] be distinct and independent, as long as the proof offered is sufficient to satisfy both elements," and that "it does not make sense to impose a 'distinctness' requirement in RICO cases").

In this case, the government sufficiently demonstrated that each of Daidone's three predicate acts—the murder of Gilmore, the murder of Facciolo, and the loansharking—were related to the Luchese enterprise, as well as to each other. Such is sufficient to satisfy the relatedness requirement under RICO.

## B. Venue Challenge

■ The statutory venue provision for witness tampering, 18 U.S.C. § 1512(i), allows venue "in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred." Daidone argues that because the evidence established that the Luchese family members believed Bruno Facciolo was

cooperating with a California investigation, and the murder occurred outside the Southern District of New York, venue in the Southern District was improper under the statute.

 A defendant waives any venue objections unless they are "specifically articulated in defense counsel's motion of acquittal." *United States v. Bala,* 236 F.3d 87, 95 (2d Cir.2000) (internal quotation marks omitted). Here, defense counsel raised objections to venue on Counts One, Two, Four, and Five, but made no venue claim with respect to Count Three. The district court then inquired whether anyone wished to discuss Count Three. Although the government responded with an explanation as to how the evidence had properly established venue, defense counsel nonetheless neither articulated an objection or basis for an objection to venue, nor addressed the issue at all. Accordingly, Daidone has forfeited this issue on appeal. *See id.; United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir.1984); *United States v. Grammatikos,* 633 F.2d 1013, 1022 (2d Cir.1980).

## C. Sentencing Challenge

 While many criminal sentences that were imposed under the United States Sentencing Guidelines before the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), have been remanded to the sentencing court for consideration of resentencing under *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), such a remand would be improper here. Daidone's conviction on Count Three carried a minimum sentence of life in prison, *see* 18 U.S.C. § 1512(a)(3)(A). Thus even after *Booker* the sentencing judge would have no discretion to grant the Defendant a lower sentence.

## D. Other Challenges

After careful consideration of the Daidone's other arguments, we conclude that each of these claims is without merit and does not require discussion. *See Polanco,* 145 F.3d at 543 (refusing to discuss meritless arguments).

## III. Conclusion

For the foregoing reasons the judgment of the district court is A**FFIRMED**.